**Klaus D. KUCK, M.D., Plaintiff,**

v.

**Pamela BENSEN, M.D., and St. Mary's General Hospital, and Emergency Medicine Associates, Defendants.**

**Civ. No. 86–0060–P.**

United States District Court,
D. Maine.

Oct. 31, 1986.

E. Paul Eggert, Robert E. Mittel, Portland, Me., for plaintiff.

John W. Geismar, Norman Croteau, Lewiston, Me., Stephen D. Libowsky, Robert P. Cummins, Chicago, Ill., Jonathan S. Piper, Portland, Me., for defendant St. Mary's.

Robert S. Hark, William D. Robitzek, Lewiston, Me., for defendants Bensen and EMA.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This matter comes before the Court on the following motions: motion of Defendant St. Mary's Hospital to dismiss; motion of Defendant Bensen for summary judgment; motion of Defendant St. Mary's Hospital for a protective order; and motion of the Plaintiff, Klaus D. Kuck, to compel discovery and for sanctions.[1]

### I. *Background*

Plaintiff, Klaus D. Kuck (Kuck), is a licensed medical doctor who resides in Lewiston, Maine. His practice consists of his work in the emergency room at St. Mary's General Hospital (St. Mary's), where he has enjoyed emergency room privileges subject to reappointment by St. Mary's Executive Committee. Kuck also assists occasionally in the operating room at St. Mary's. Kuck has no office and no patients other than those he sees in St. Mary's emergency room.

Pamela Bensen (Bensen) is also a licensed medical doctor. At all times relevant to this matter, she served as chairperson of the Department of Emergency Services at St. Mary's and, as such, was a member of St. Mary's Executive Committee. Bensen was also instrumental in establishing Emergency Medicine Associates (EMA), a professional association whose purpose is to provide emergency medical services to hospitals. EMA entered into an exclusive provider contract with St. Mary's in December of 1985; under that contract,

---

1. Defendants Bensen and Emergency Medicine Associates adopt and incorporate all arguments made by Defendant St. Mary's General Hospital regarding the motions to dismiss and for summary judgment.

EMA became the exclusive provider of St. Mary's emergency room physicians. Kuck is not an employee of EMA.

On or about December 6, 1985, the Executive Committee at St. Mary's heard reports addressing Kuck's professional competence. Bensen participated at this meeting and at subsequent meetings to determine the nature of privileges to be granted by St. Mary's to various doctors. As a result of the review process, St. Mary's reduced Kuck's privileges.

Kuck filed this civil action for damages and injunctive relief. He seeks damages against Bensen for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982 & Supp. III 1985); defamation; and for intentional infliction of emotional distress. He also seeks damages against St. Mary's for age discrimination in violation of ADEA, breach of contract, and defamation. Finally, he seeks injunctive relief pursuant to sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1982), to prevent Bensen and St. Mary's from giving effect to the exclusive provider contract entered into by St. Mary's and EMA.

The Court will now consider Defendants' motion to dismiss.

## II. *Motion to Dismiss*

### A. *Failure to State a Claim Under the Antitrust Laws*

Plaintiff's Complaint alleges that the exclusive provider contract between St. Mary's and EMA violates sections 1[2] and 2[3] of the Sherman Act; specifically, Plaintiff alleges that the contract constitutes an unreasonable restraint of trade in the emergency medicine market and an attempt by Bensen and EMA to monopolize the relevant emergency medicine market.

It is a fundamental principle that a plaintiff asserting an antitrust claim must allege sufficient facts to establish a substantial effect on interstate commerce. *McLain v. Real Estate Board,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). Although this requirement ordinarily should not pose a difficult hurdle for a plaintiff, the cases make clear that a certain degree of specificity is required. *See, e.g., Marrese v. Interqual, Inc.,* 748 F.2d 373 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985) (complaint sufficient in which plaintiff, orthopedic surgeon, alleged that he treated out-of-state patients; purchased medicine, equipment, and medical supplies from out-of-state purveyors; derived revenues from Medicare, Medicaid, and out-of-state private insurers; paid management and accounting fees to out-of-state consultants; and that revocation of clinical privileges would prevent him from practicing anywhere); *Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986) (complaint insufficient in which plaintiff, physician, alleged that the defendant purchased drugs and equipment in interstate commerce; received payment from out-of-state private and governmental insurers; treated out-of-state patients, and shared medical information and training across state lines); *Furlong v. Long Island College Hospital,* 710 F.2d 922 (2d Cir.1983) (complaint insufficient in which plaintiff, doctor, alleged that defendants' conduct resulted in loss of revenue from out-of-state insurers). *See also Cordova & Simonpietri Insurance Agency v. Chase Manhattan Bank,* 649 F.2d 36 (1st Cir.1981) (plaintiffs, insurance broker and its president, failed to meet jurisdictional standard of Sherman Act where only evidence offered in opposition to motion to dismiss consisted of sample policy and list

---

**2.** Section 1 provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1982).

**3.** Section 2 provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2 (1982).

of policies written by insurer which did not, on their face, describe reinsurance).

In the case at bar, Plaintiff has alleged simply that the operation of the emergency room at St. Mary's involves a "substantial amount of interstate commerce." It is questionable, therefore, whether Kuck has met the jurisdictional pleading requirement of the Sherman Act.

Even if Plaintiff's Complaint sufficiently alleges a substantial effect on interstate commerce, however, the Court is persuaded that the exclusive provider contract in this case does not violate the Sherman Act. The Supreme Court addressed the propriety of exclusive provider contracts in *Jefferson Parish Hospital District v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). In *Jefferson Parish*, the Supreme Court held that an exclusive provider contract between a hospital and a firm of anesthesiologists was not unlawful *per se* or under the "rule of reason" based on the specific facts of that case. Furthermore, the Court suggested that traditional antitrust analysis must be used to determine relevant product and geographical market forces. *Id.* at 9–18, 104 S.Ct. at 1556–62.

The product market in the present case is the market for emergency medical services. Kuck's Complaint states that his practice is dedicated to emergency medicine, and EMA's purpose is likewise to provide emergency services.

The relevant geographic market is not as easily defined. Kuck alleges that, due to a "tradition of rivalry that borders on hostility" between St. Mary's and Central Maine Medical Center (CMMC) (the only other hospital serving Androscoggin County), the relevant market is St. Mary's. Alternatively, Kuck alleges, the relevant market is Androscoggin County.

█ After reviewing the record before it, the Court is convinced that the relevant geographic market in this case is Androscoggin County. Whatever rivalry may be perceived by the personnel of the two hospitals is a minor matter in light of the serious restraints on commerce that are subject to the antitrust laws. The Plaintiff's personal preference to continue his practice at St. Mary's does not justify excluding another area hospital from the "relevant geographic market." Moreover, the exclusive provider contract does not unreasonably enhance St. Mary's market position relevant to its competitor, CMMC; based upon the facts alleged in Plaintiff's own Second Amended Complaint, St. Mary's handles only 37% of the emergency room volume in the subject market compared with CMMC's 63%. Plaintiff's Second Amended Complaint, ¶ 12. This division of the market suggests that the exclusive provider contract will not affect a substantial portion of the market. *See Gonzales v. Insignares*, 1985–2 Trade Cas. (CCH) ¶ 66,-701 (N.D.Ga.1985) (complaint alleging that doctor terminated from entity providing exclusive anesthesiology services at hospital controlling 40% of the relevant market held not to state an antitrust claim, because 60% of the relevant market unaffected).

Finally, the Court notes that a number of jurisdictions have, on the merits, held exclusive provider contracts for medical services not to violate the Sherman Act. *See, e.g., Ezpeleta v. Sisters of Mercy Health Corp.*, (7th Cir.1986) (*per curiam*) (exclusive contract providing anesthesiology services to hospital held not to violate Sherman Act); *Smith v. Northern Michigan Hospital, Inc.*, 703 F.2d 942 (6th Cir.1983) (exclusive emergency room contract did not violate the Sherman Act; hospital had legitimate medical and financial reasons to staff the emergency room with specialists); *Capili v. Shott*, 620 F.2d 438 (4th Cir.1980) (*per curiam*) (interstate commerce not substantially affected by hospital's exclusive contract with professional medical corporation to provide anesthesiology services); *Wright v. Southern Mono Hospital District*, 631 F.Supp. 1294 (E.D.Cal.1986) (facts alleged did not constitute a Sherman Act violation, but court continued to consider the substantive claim, granting summary judgment in defendant's favor).

The Defendants' motion to dismiss Plaintiff's claim under sections 1 and 2 of the Sherman Act is hereby GRANTED.

## B. *Failure to State a Claim Under the Age Discrimination in Employment Act*

Plaintiff's Second Amended Complaint alleges that both Bensen[4] and St. Mary's[5] have engaged in age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) (1982).[6] Defendants have moved to dismiss this claim on the grounds that Plaintiff has failed to allege an essential element, namely, that Plaintiff is an employee. Plaintiff, in response, contends that his employee status is a matter for proof at trial.

■ "A plain reading of the ADEA indicates that an 'individual' only has a cause of action under [section 623(a) ] if he is an 'employee' at the time of his termination." *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 980 (4th Cir.1983) (citations omitted). As defined in the ADEA, an "employee" is simply "an individual employed by any employer." 29 U.S.C. § 630(f) (Supp. III 1985). While this definition provides little guidance, the cases suggest that the proper test in the ADEA context for determining whether an individual is an employee "incorporates both the common law test derived from the principles of agency ['right to control' test] and the so-called 'economic realities test'...." *Garrett,* 721 F.2d at 981.

■ The test for determining whether an individual is an employee in the ADEA context may, in some cases, involve difficult issues of fact. Given the present posture of this case, however, the Court finds it unnecessary to apply the test. Defendants base their motion to dismiss the ADEA claim on the grounds that Kuck has failed to allege employee status at St. Mary's.[7] Plaintiff, in response, submitted a memorandum opposing the motion, as well as his personal affidavit.[8] Plaintiff, however, offers no evidence, either in his affidavit or in documentary form (for example, a paycheck made out to Kuck drawn on St. Mary's bank account), to rebut Defendants' assertion that Kuck was not an employee at St. Mary's. Additionally, the Court's own review of the Bylaws of the Medical-Dental Staff of St. Mary's discovered no provisions suggesting that physicians who enjoy privileges at St. Mary's are employees.[9]

---

**4.** Second Amended Complaint, ¶ 47 (age discrimination by Bensen "in recommending that Plaintiff, age 56, have his privileges limited, while making no such recommendations as respect to [sic] the other members of the Emergency Department (none of whom is more qualified than plaintiff)").

**5.** Second Amended Complaint, ¶ 48 (age discrimination by St. Mary's in accepting Bensen's recommendation).

**6.** 29 U.S.C. § 623(a) states:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.

**7.** Defendants refer to certain of Kuck's deposition testimony that Defendants contend is inconsistent with employee status. Defendants' Memorandum in Support of its Motion to Dismiss, at 11 n. 1. Because this deposition has not been submitted to the Court, however, the Court cannot consider Defendants' contention.

**8.** Although Kuck's affidavit is captioned "In Opposition to Defendant Bensen's Motion for Summary Judgment," the Court notes that the affidavit was filed subsequent to St. Mary's motion to dismiss as well as subsequent to the motion for summary judgment. Apparently, Kuck felt compelled and able to respond by affidavit to the motion for summary judgment, but not compelled or not able to respond in kind to the motion to dismiss. In any event, Kuck has availed himself of his right to present affidavits on his behalf to the Court.

**9.** The Bylaws speak of "membership" on the Medical-Dental Staff with "privileges" to attend patients at St. Mary's. Articles VI, VII, and VIII, which address procedures for appointment and reappointment, clinical privileges, and corrective action, in no way suggest that those who hold privileges are "employees."

Given the plain language of section 623(a) requiring that a plaintiff bringing an ADEA action be an "employee," the Court cannot accept this Plaintiff's suggestion that he need not specifically plead his employee status. Because Plaintiff has been alerted to Defendants' argument in this motion to dismiss, and because Plaintiff has failed to adequately rebut this argument with specific pleading or evidentiary material, Defendants' motion to dismiss Plaintiff's ADEA claim is hereby GRANTED.

### C. *Disposal of Pendent State Claims*

Plaintiff invokes the federal question jurisdiction of this Court under the antitrust and age discrimination statutes,[10] and invokes the Court's power of pendent jurisdiction to hear his state law claims.[11]

 "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *UMW v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted). A federal court may exercise its power of pendent jurisdiction if the federal and state claims derive from a common nucleus of operative fact and if the claims are such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. *Id.* at 725, 86 S.Ct. at 1138. If, however, the justifications for pendent jurisdiction—judicial economy, convenience, and fairness to litigants—are absent in a particular case, the federal court should hesitate to exercise its discretion. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139 (footnote omitted).

In the present case, no independent basis for federal subject matter jurisdiction exists over the pendent state law claims. The Court has dismissed Plaintiff's Sherman Act and ADEA claims, and no proceedings on the merits of the state law claims have been conducted. The Court therefore dismisses Plaintiff's pendent state law claims. Plaintiff is free to pursue these claims in state court.

### III. *Conclusion*

Plaintiff has failed to state a claim under either the antitrust or age discrimination statutes. Absent a federal question, this Court also is without power to exercise its pendent jurisdiction. The Court therefore DISMISSES Plaintiff's Second Amended Complaint in its entirety and finds it unnecessary to rule on any other motions now pending in this matter. The remaining procedural motions are hereby DISMISSED as MOOT.

So ORDERED.

---

**10.** Specifically, Plaintiff relies on 28 U.S.C. §§ 1331, 1337 (1982).

**11.** Kuck's state law claims are for slander, libel, defamation, and breach of contract, arising under state common law.