**Philip L. SNOWDEN, M.D., Plaintiff,**

v.

**MILLINOCKET REGIONAL HOSPITAL, et als., Defendants.**

**Civ. No. 82–0164–B.**

United States District Court, D. Maine.

Jan. 9, 1990.

---

Philip L. Snowden, West Medford, Mass., pro se.

Daniel T. Rush, Millinocket, Me., for defendant Millinocket Regional Hosp.

Jules Mogul, Bangor, Me., for defendant Board of Trustees.

Michael Seitzinger, Augusta, Me., for defendant Peter Mason.

## MEMORANDUM OF DECISION AND ORDER ON RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PRIOR ACTIONS OF THE COURT THEREON

GENE CARTER, Chief Judge

### I. Introduction

This matter is before the Court pursuant to certain actions taken by the Court in its Memorandum and Order entered on July 13, 1989 (Docket No. 167) (per Cyr, C.J.), directing further briefing of certain issues left unresolved by the Court in said Memorandum and Order.[1] The Court, acting per Carter, C.J.,[2] now intends to adjudicate the issues which remain outstanding as a result of the Court's Memorandum and Order of July 13, 1989,[3] the supplementation of the record that has occurred since then, and the additional briefing that has taken place as a result of the Court's said Order.

### II. Procedural History

The procedural history of this matter is tortuous and must be set out in some detail in order to fix the context in which the Court now acts. This matter was commenced by the filing of the complaint in this Court on August 30, 1982 (Docket No.

---

1. As a result of that Memorandum and Order, the filings of the parties on Defendants' motions have now been supplemented by papers designated Docket Nos. 168–172, consisting of a further response by Plaintiff to Defendants' summary judgment motion, a further statement of material facts of the Plaintiff thereon, and affidavits of the Plaintiff and one Charlotte Mayo in support of Plaintiff's position. The record now also includes a suggestion of death of Defendant Walter Birt, filed on September 21, 1989 (Docket No. 172).

In addition, the parties have filed their respective memoranda of law discussing the impact of *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), upon the issues generated by Defendants' pending motions for summary judgment in respect to the single remaining federal claim under section 1981. *See infra* at 705. Those memoranda are Docket Nos. 64M–66M.

2. Chief Judge Cyr was installed as a judge of the Court of Appeals for the First Circuit on November 20, 1989. This Judge on that date succeeded to responsibility for further proceedings in this case.

3. These are: (1) Plaintiff's section 1981 claim for alleged refusal to assist Plaintiff in establishing a private practice as against Defendants Hospital, Birt and Mason, and (2) Plaintiff's state-law-based claims for alleged deceptive trade practices and interference with contractual relations as against Defendants Hospital and Mason.

1). In the complaint, Plaintiff advances six claims for relief, described as follows by Chief Judge Cyr in his first Memorandum addressing then-pending motions for summary judgment by all parties:

The *first* [claim] avers that defendants discriminated with respect to the terms and conditions of plaintiff's employment because of his race, in violation of 42 U.S.C. § 2000e–2(a), 42 U.S.C. § 1981, and Me.Rev.Stat.Ann. tit. 5 §§ 4571, 4572.1.A (West 1978). The *second* alleges that the defendants conspired to deprive plaintiff of equal protection of the laws, in violation of 42 U.S.C. § 1985(3). The *third* and *fourth* claims are that the defendants conspired to restrain trade and to monopolize 'the market for job opportunities for persons desiring to practice obstetrics and the market for the provision of obstetric services,' in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2. The *fifth* and *sixth* claims assert violations of state law.

Memorandum and Order of February 20, 1987 (Docket No. 109) at 7 (emphasis in original).

The matter progressed from the filing of the complaint in a virtual paper blizzard, encompassing by February 20, 1987, a total of one hundred and eight docket entries, including the motions for summary judgment by all parties and numerous supporting filings in connection with those motions (exclusive of legal memoranda) and a Recommended Decision of the Magistrate (Hornby) (Docket No. 100). Chief Judge Cyr, in his Order of that date reviewing the Magistrate's Recommended Decision, set forth the facts of the matter as the record then disclosed them, at pages 1–6 of his Memorandum and Order. After forty-odd pages of legal discussion and factual analysis, Chief Judge Cyr, by his Order of February 20, 1987:

(1) *accepted* that portion of the Magistrate's Recommended Decision which *denied* Plaintiff's motions for summary judgment (Docket Nos. 86 and 87);

(2) *reserved decision* on Defendants' motions for summary judgment (Docket Nos. 83 and 84) as to those portions of Count I which allege discrimination in failing to assist Plaintiff in establishing his private practice and in permitting a "racist" atmosphere to exist at the hospital pending further supplementation of the record;

(3) *granted* Defendants' motions for summary judgment on all other discrimination claims alleged under Count I;

(4) *reserved* decision on Defendants' motions for summary judgment on Counts III, V and VI, and on that portion of Count IV alleging a conspiracy to monopolize;

(5) *granted* Defendants' motions for summary judgment on those portions of Count IV alleging actual or attempted monopolization;

(6) concluded that there remained disputed issues of material fact pertaining to Plaintiff's claims that he was denied assistance in establishing his private practice and that he was subject to racial harassment at the hospital. He noted, however, that it was possible that these issues could be resolved or significantly narrowed by supplementation of the record and granted Defendants thirty days from the date of entry of the February 20, 1987 Order to supplement their motions for summary judgment;

(7) *reserved decision* on whether the hospital could be considered Plaintiff's employer for purposes of Title VII and directed further briefing on that question, setting a total briefing period of sixty days; and

(8) he provided for further supplementation of the record by Plaintiff and Defendants in regard to Plaintiff's claims in Counts II, III, and the remaining claim in Count IV.

Following entry of the Memorandum and Order of February 20, 1987, the weather closed down once again and the paper blizzard resumed. Thirty-two docket entries and eleven months later, Chief Judge Cyr had the first ensuing opportunity to touch in any substantive way those aspects of the

motions for summary judgment that he had left pending by his prior Order.

On January 15, 1988, he entered his Memorandum and Order (Docket No. 141) bringing forward his consideration of aspects of the pending motions for summary judgment that remained outstanding for adjudication as a result of his February 20, 1987 Order. After acting upon pending motions ancillary to the summary judgment motions themselves, he gave extended written consideration to the aspects of the summary judgment motions that remained pending. By his Order of that date, he:

(1) *denied* Plaintiff's motion for reconsideration of the February 20, 1987 Order (Docket No. 110) to the extent that it denied Plaintiff's prior motions for summary judgment (Docket Nos. 86 and 87);

(2) *denied* Plaintiff's renewed motion (Docket No. 115) for summary judgment;

(3) *denied* Plaintiff's motion to amend the complaint (Docket No. 135);

(4) *denied* a Plaintiff's motion (Docket No. 126) with respect to Plaintiff's efforts to determine the whereabouts of Defendant Birt and to oppose late motions of other parties;

(5) *granted* Defendants' motions for summary judgment on Plaintiff's Title VII claims;

(6) *granted* Defendant Morrissey's motion for summary judgment on Plaintiff's section 1981 claims;

(7) *denied* the summary judgment motions of Defendants Hospital, Birt and Mason on Plaintiff's section 1981 claim alleging failure to assist Plaintiff in establishing a private practice;[4]

(8) *granted* summary judgment motions of Defendants Hospital, Birt and Mason on Plaintiff's section 1981 claim alleging racial harassment;

(9) *granted* Defendants' motions for summary judgment on Plaintiff's section 1985(3) conspiracy claim;

(10) *granted* Defendants' motions for summary judgment on Plaintiff's Sherman Act claims;

(11) *granted* Defendants' motions for summary judgment on Plaintiff's *pendente* state law discrimination and antitrust claims; and

(12) he retained jurisdiction over Plaintiff's state-law-based claims for deceptive trade practices and interference with contractual relations, Memorandum and Order at 20.

The blizzard resumed. Fourteen docket entries and six months later, Chief Judge Cyr acted once again on the pending summary judgment motions by his Memorandum and Order entered on July 15, 1988 (Docket No. 155). In that Memorandum and Order, he addressed Defendants' motions with respect to the state-law-based claims, the action he had previously deferred, *supra* at 4 and 6. He treated the motions in the latter context pursuant to Fed.R.Civ.P. 12(b) and 56. By that Order, he:

(1) *granted* motions for summary judgment of Defendants Birt and Morrissey with respect to state law based claims for deceptive trade practices;

(2) *reserved decision* on similar motions by Defendants Mason and Hospital, as represented by Defendant Mason, and permitted Plaintiff an additional thirty-day period within which to supplement the record with respect to three factual issues;

(3) *granted* Defendant Birt's and Defendant Morrissey's motions for summary judgment on Plaintiff's claim for interference with contractual relations; and

(4) he *deferred ruling upon* the summary judgment motions of Defendants Mason and Hospital pending the timely supplementation of the record as

---

**4.** The genuine issues of material fact found by the Court to exist on this claim are set out *infra* at 10.

he had previously ordered that to occur.[5]

The intensity of the paper blizzard abated, but it hung doggedly on, for a year. Twelve docket entries later Chief Judge Cyr was back at the drafting table with his Memorandum and Order entered on July 13, 1989 (Docket No. 167). After extended discussion on the record as it then existed, he concluded that Plaintiff's *pendente* state-law-based claims for deceptive trade practices and interference with contractual relations as against Defendants Hospital and Mason must be "dismissed," [6] but deferred doing so and reserved decision on those claims pending filing of further supplementation of the record in the form of memoranda of law which he had previously ordered in that Memorandum and Order, addressing the application of the recent case of *Patterson v. McLean Credit Union*, — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), to the outstanding Count I, section 1981 claim based on alleged refusal to assist Plaintiff in establishing his private practice.

In discussing that decision in his Memorandum and Order of July 13, 1989, Chief Judge Cyr concluded that the *Patterson* case holds that the scope of the protections of section 1981 are restricted to the *making and enforcement* of contracts. Memorandum and Order of July 13, 1989, at 2. He did not undertake a definitive application of this rule to this case,[7] concluding only that:

> It is at least arguable that plaintiff's section 1981 claim, alleging discrimination in the failure of the defendants to assist plaintiff in establishing a private practice, no longer alleges conduct violative of section 1981 in light of *Patterson*.

*Id.* at 5. He permitted the parties to file within twenty additional days memoranda addressing the effect of the *Patterson* case on Plaintiff's "pending section 1981 claim, including but not limited to, whether *Patterson* is to be applied retroactively." *Id.*

### III. Discussion of Outstanding Issues

### A.

The only substantive claims set forth in the complaint that remain outstanding for adjudication are: (1) Plaintiff's claim of a violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts, by the alleged refusal of Defendants Mason and Hospital to assist Plaintiff in setting up a private practice in the Millinocket area, and (2) the two *pendente* state-law-based claims for deceptive trade practices and interference with contractual relations which Chief Judge Cyr determined to be in order for "dismissal," but deferred doing so pending final resolution of the single outstanding section 1981 claim. This Judge now addresses those outstanding issues.

With respect to the section 1981 claim, Chief Judge Cyr has previously made the following findings of fact which are pertinent to the Court's present consideration of that claim: [8]

> The affidavit of Noel Evans, the Hospital Recruitment Committee Chairman at the time Plaintiff began working in Millinocket, states that the Hospital has a policy of assisting only recruited doctors and that Plaintiff, unlike other doctors who received assistance, was not recruited and did not fill a need for medical services in the area. Evans Affidavit, ¶¶ 1–4 (March 23, 1987). In ... [his] supplemental affidavit[ ], Defendant[ ] Mason ... state[s] that [he] held no position of authority in the Hospital when

---

**5.** At this stage there remained outstanding for further action: (1) Plaintiff's section 1981 claim for alleged refusal to assist Plaintiff in establishing a private practice as against Defendants Hospital, Birt, and Mason, and (2) Plaintiff's state-law-based claims for alleged deceptive trade practices and interference with contractual relations as against Defendants Hospital and Mason.

**6.** *See infra* at 709 and n. 12.

**7.** It appears that Chief Judge Cyr had raised the applicability of *Patterson* to this case *sua sponte*, and it does not appear that he had at this juncture the benefit of any briefing on the subject by counsel.

**8.** This Judge adopts, as set out here, these findings for purposes of the present consideration of the outstanding issues.

Plaintiff joined the medical staff, and therefore ... [he] cannot be held responsible for any discrimination in failing to assist Plaintiff in establishing a private practice ... Defendant Mason asserts that he held no medical staff office and "was not a member of the Hospital's board of trustees, a member of the administrative staff of the Hospital, or an officer, employee, or agent of the Hospital" when Plaintiff joined the staff. Mason's Supplemental Affidavit, ¶ 5 (March 23, 1987).

Plaintiff challenges the defendants' reliance on the Hospital's alleged policy of assisting only recruited doctors. Plaintiff's own affidavit attests that he was recruited by the defendants; that Dr. Mason, acting as "a recruiting agent for the Hospital," told him that plaintiff "was the new doctor they recruited and would get assistance;" and that Dr. Hamlin informed him that the Board of Trustees had appointed Dr. Hamlin to inform the plaintiff that he would get no assistance because the Board "did not think a negro should be practicing in the area."

Snowden Supplemental Affidavit, ¶¶ 4–8 (April 23, 1987). Furthermore, Plaintiff argues that the two other doctors who allegedly received assistance in establishing a family practice at the time Plaintiff moved to Millinocket, see Evans Affidavit, ¶¶ 2, 3, were less qualified than Plaintiff to be recruited as family practitioners. Plaintiff alleges that one of the doctors was a specialist in internal medicine and cardiology who lacked the medical background to practice family medicine and that the other doctor was too ill to work full time every day."

Memorandum and Order of January 15, 1988 (Docket No. 141), at 13–14 (footnote omitted). Chief Judge Cyr concluded that there remained genuine issues of *material* fact as to (1) whether Plaintiff was recruited by the Hospital; (2) whether Dr. Hamlin and/or Dr. Mason represented the Hospital in recruiting Plaintiff or in rendering advice or assistance regarding Plaintiff's establishment of a private practice; and (3) whether Plaintiff was treated differently than similarly situated doctors who joined the Hospital's medical staff when Plaintiff did and who were given assistance in establishing a private practice. *Id.* at 14–15.

A careful review of the extensive record in this case displays that *the claim* of Plaintiff now before the Court for determination is that in late 1979, Plaintiff was recruited by Millinocket Regional Hospital and as a result thereof, he applied for and was admitted to membership on the medical staff of that Hospital. Complaint (Docket No. 1), ¶ 13, at 4. Further, he contends that he opened a private medical practice at 24 Park Street in East Millinocket, Maine. *Id.*, ¶ 14, at 4. It is apparent from the evidentiary record made on the pending motions that Plaintiff's contention is that one of the contractual commitments made by the Hospital in order to induce him to come to Maine and accept membership on the staff of the Hospital was that the Hospital would render him assistance in establishing a private practice. It is Plaintiff's contention that this term of the alleged contract has not been performed by the Hospital. Thus, his claim is based upon a contention that the Defendant Hospital, as represented by Defendants Mason and Birt, has failed to perform a term of its contract with Plaintiff.

### B.

■ A claim so founded must fail under section 1981 as a result of the holding in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The *Patterson* Court held that racially discriminatory post-formation conduct in the performance of a contract cannot be the basis of a section 1981 claim of racial discrimination in contract relations. The Court noted that the exclusive federal remedy for that type of conduct is Title VII of the Civil Rights Act of 1964. *Id.* at —— ––——, 109 S.Ct. at 2374–75. The Court unequivocally establishes the foregoing principle in the following language of its opinion:

> *Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract rela-*

*tions, for it expressly prohibits discrimination only in the making and enforcement of contracts.* See also *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 [88 S.Ct. 2186, 2201, 20 L.Ed.2d 1189] (1968) (§ 1982, the companion statute to § 1981, was designed "to prohibit all racial discrimination, whether or not under color of law, *with respect to the rights enumerated therein* ") (emphasis added); *Georgia v. Rachel*, 384 U.S. 780, 791 [86 S.Ct. 1783, 1789, 16 L.Ed.2d 925] (1966) ("The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights").

By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. *But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions.* Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII....

The second of these guarantees, "the same right ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices. It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract. Following this principle and consistent with our holding in *Runyon* [*v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) ] that § 1981 applies to private conduct, we have held that certain private entities such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent member [sic] in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability under § 1981 for racial discrimination in the enforcement of labor contracts. See *Goodman v. Lukens Steel Co.*, 482 U.S. 656 [107 S.Ct. 2617, 96 L.Ed.2d 572] (1987). *The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights.* As JUSTICE WHITE put it with much force in *Runyon*, one cannot seriously "contend that the grant of the other rights enumerated in § 1981, [that is, other than the right to "make" contracts,] *i.e.*, the rights 'to sue, be parties, give evidence,' and '*enforce* contracts' accomplishes anything other than the removal of *legal* disabilities to sue, be a party, testify or enforce a contract. Indeed, it is impossible to give such language any other meaning." 427 U.S., at 195, n. 5 [96 S.Ct., at 2606, n. 5] (dissenting opinion) (emphasis in original). —— U.S. at ——, 109 S.Ct. at 2372–73 (emphasis added).

In light of this explication of the pertinent law by the United States Supreme Court, Plaintiff cannot establish a section 1981 claim based upon the Hospital's post-contract-formation conduct. Accordingly, as Chief Judge Cyr perceptively anticipated, Memorandum and Order of July 13,

1989 (Docket No. 167) at 5, the three issues of disputed fact which he had previously isolated as material to a resolution of Plaintiff's claim, Memorandum and Order of July 15, 1988 (Docket No. 155), at 8, *see supra* at 10–11, can no longer be judged to be *material* to a resolution of the claim if the post-formation conduct of Defendants is *per se* insufficient to support a section 1981 claim. There is no indication anywhere in this record that it is even contended that any of the Defendants' acts prevented formation or enforcement of any alleged contract of hire. What is alleged is a failure of *performance* of an alleged contract term. With the law as it stands after *Patterson*, whether Plaintiff was recruited to Defendant Hospital's medical staff, the representations made to induce him to join the staff, and whether one or more Defendant's post-contract-formation conduct resulted in discriminatory treatment of Plaintiff in the performance of the contract are of no relevant moment.[9] Unless Plaintiff can establish that the conduct of Defendants discriminated against him because of his race in the formation or enforcement of the contract, he cannot, as a matter of law, prevail. Accordingly, this Court concludes that *Patterson* has obviated the materiality of the three issues originally discerned by Chief Judge Cyr to be material to a resolution of this section 1981 claim.[10]

■ This Court is satisfied that the *Patterson* case is properly to be extended full retroactive effect. The United States Supreme Court has made it clear that full retroactivity of its decisions is the general rule. *Bell v. New Jersey*, 461 U.S. 773, 777, n. 3, 103 S.Ct. 2187, 2190, n. 3, 76 L.Ed.2d 312 (1983). The Court has set out in *Chevron Oil Company v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the criteria to be applied in determining whether a decision is to be denied full retroactive effect.[11] Applying those criteria in the context of the record made here to the issues governed by *Patterson*, the Court is satisfied that *Patterson* does not meet those criteria in its application to this case and that it is to be treated as fully retroactive in assessing its impact on this case.

Accordingly, the summary judgment motions of Defendants Mason, Birt, and Hospital are hereby *GRANTED* as to Plaintiff's section 1981 claim alleging racial discrimination because of refusal to assist Plaintiff, pursuant to an alleged contract commitment, in establishing his private practice.

**9.** The Court has examined the filings made by Plaintiff after entry of Chief Judge Cyr's Memorandum and Order of July 13, 1989 (Docket No. 167), on August 3, 1989 (Docket Nos. 168–71), and finds that they make assertions as to the conduct of Defendants which took place only after contract formation had occurred.

**10.** Further, the Court observes that even if a section 1981 claim can be stated against the Hospital on the record here made, this Court is not able to discern from the record any basis upon which such a claim can be made against Dr. Mason. The only factual support given to this claim by Plaintiff occurs in the Supplemental Affidavit of Plaintiff, filed on April 23, 1987 (Docket No. 133), wherein it is stated at ¶¶ 7–8 that he had certain discussions concerning the matter with *Dr. Hamlin*. The Court has been able to find no other assertion of evidentiary quality in the entire record in this case that would support a conclusion that Dr. Mason, acting either individually or on behalf of the Defendant Hospital, took any action, or in any way failed to act, with respect to the alleged refusal of the Hospital to assist Plaintiff in setting up his private practice. Thus, the section 1981 claim cannot survive *Dr. Mason's* motion for summary judgment in any event.

**11.** The criteria, as articulated in *Huson*, are: "First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed ... Second, ... 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding or non-retroactivity.' " 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

## C.

█ The only matter remaining extant in this case for action by the Court is the dismissal of the two state-substantive-law-based *pendente* claims of Plaintiff for alleged deceptive trade practices and interference with contractual relations. This Court has reviewed fully the consideration given these matters by Chief Judge Cyr in his Memorandum and Order of July 15, 1988 (Docket No. 155) at 2–11, and Memorandum and Order of July 13, 1989 (Docket No. 167) at 5–14. The Court concurs fully in the analyses there set forth by Chief Judge Cyr in assessing the viability of these claims. The Court notes his tentative conclusion that these claims "must be dismissed."[12] Memorandum and Order of July 13, 1989 (Docket No. 167) at 14.

The question now posed is whether the federal court should act upon the merits in disposing of the only remaining claims: the state-law-based claims for deceptive trade practices and interference with contractual relations as against Defendants Hospital and Mason, pursuant to Chief Judge Cyr's prior analysis and deferred decision, with which this Court fully concurs after independent review of the merits of the claims; or, pursuant to *Gibbs*, should dismiss these claims without prejudice, leaving them eligible for further pursuit in the state courts. The *Gibbs* doctrine is a confusing amalgam of juridical power and judicial discretion and the United States Supreme Court has never clearly articulated the interrelationship of its competing elements. The doctrine appears to be founded, in the first instance, upon the absence of a federal court's jurisdiction over claims based solely upon state law where (1) the federal court has found to be without merit federal claims to which the state claims are appended in federal court, and (2) no independent basis of federal jurisdiction exists with respect to the state claims. *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. On the other hand, even if power, that is jurisdiction, exists over the state-law-based claims, the federal court has the discretionary authority to decline to exercise the jurisdictional power, on the basis, *inter alia*, of considerations of comity, trial convenience, or potential jury confusion. *Id.* at 727, 86 S.Ct. at 1139. The doctrine is predominantly one

> of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these *are not present* a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them ... [citation omitted]. Needless decisions of state law should be avoided both as a matter of comity and to promote justice

---

**12.** If one focuses only upon a disposition of the state-law-based claims on their respective merits, this suggestion of *dismissal* is puzzling because Chief Judge Cyr's analysis of these claims on their merits appears to have been conducted on consideration of a record which included matters outside the pleadings, Memorandum and Order (Docket No. 155) at 8–9 and 11–12; Memorandum and Order (Docket No. 167) at 5–6, thereby requiring that the motions be treated as ones for summary judgment pursuant to Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); *Puerto Rican-American Insurance Co. v. Benjamin Shipping Co.*, 829 F.2d 281, 285 (1st Cir.1987). Thus, an appropriate merits-based disposition of the motions *vis-a-vis* these claims would appear to be the granting of the motions as ones for summary judgment as to the subject claims and an order directing entry of judgment in favor of Defendants on them.

This Court mistrusts, however, that Chief Judge Cyr had in mind that reconsideration of the only outstanding federal claim, the section 1981 claim based on refusal to assist Plaintiff in establishing his private practice, might result in entry of summary judgment on *that* claim. Such a result, he may have thought, would require under *UMW v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that this Court dismiss the state-law-based claims without action on the merits. *See Kuck v. Bensen*, 647 F.Supp. 743, 743–48 (D.Me.1986), *vacated* on reinstatement of federal law claims, *Kuck v. Bensen*, 649 F.Supp. 68 (D.Me.1986).

The Court concludes that this latter principle was the basis on which Chief Judge Cyr withheld action on the state-law-based claims after having completed a merits-based analysis that dictated entry of summary judgment on those claims. Absent concern for the applicability of *Gibbs* and an anticipated need for this Court's exercise of a discretionary judgment in determining whether to act on the state-law-based claims, there was no other reason which this Court can discern for Chief Judge Cyr's reluctance to enter the summary judgment on the state-law-based claims in the Order of July 13, 1989 (Docket No. 167).

between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. at 1139 (emphasis added).

Having said that, however, the Court goes on to say in the very next sentence, *"Certainly,* if the federal claims are dismissed *before trial,* even though not insubstantial in a jurisdictional sense, *the state claims should be dismissed as well. Id.* (emphasis added). This latter sentence seems clearly to require dismissal without action on the merits and without any exercise of discretion if all the federal claims in this suit are found to be, short of trial, deficient. This at least appears to be an element of certainty in the *Gibbs* doctrine [13] and leaves no arena for the exercise of this Court's discretion once it has determined that all federal claims, substantial or not, fail. The Court here having found that the only remaining federal claim—that made under section 1981 for alleged refusal to assist Plaintiff in establishing his private practice—falls to Defendants' summary judgment motions, it must dismiss without prejudice the state-law-based claims in question even though, were the Court free to exercise its discretion on considerations of comity, judicial economy, substantial justice to the parties, and ending a tediously overworked piece of litigation, it would find in favor of the exercise of jurisdiction and enter summary judgment against Plaintiff on these remaining state-law-based claims.[14]

## D.

For the foregoing reasons, it is hereby ORDERED that:

(1) Summary judgment ENTER in favor of Defendants Hospital, Mason, and Birt on Defendants' motions for summary judgment with respect to Plaintiff's section 1981 claim based upon the alleged refusal of Defendants to assist Plaintiff in establishing his private practice; and

(2) Plaintiff's state-law-based claims for alleged deceptive trade practices and interference with contractual relations as against Defendants Hospital and Mason be, and are hereby, DISMISSED without prejudice.

**13.** The Court has no clear or comprehensive understanding of what the plurality decision in *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), may portend for evolutional nuances in the development of the *Gibbs* doctrine. A careful study of the opinions in the case, however, satisfies the Court that the certainty the Court has found in the *Gibbs* articulation (*e.g.,* that the failure of the federal claims removes the power of the Court to adjudicate *pendente* state claims as to which there is no independent basis of federal jurisdiction) is not significantly undercut in the absence of compet-

ing *constitutionally* based federal and state claims.

**14.** Lest there be any doubt, in the case of appellate review, the Court will indicate that its basis for this adjudication of the state-law-based claims would be Chief Judge Cyr's analysis of those claims on their respective merits in his Memorandum and Order of July 15, 1988 (Docket No. 155) at 2–11 and Memorandum and Order of July 13, 1989 (Docket No. 167) at 5–14, which this Court has fully reviewed, concurs in, and would adopt as its own.