### Elaine CONNOLLY, Plaintiff

v.

### H.D. GOODALL HOSPITAL, INC., Shelly Stuart, R.N., Jeffrey Toner, and Delores Hopper, R.N., Defendants

### No. CIV.04–246–P–C.

United States District Court,
D. Maine.

Jan. 14, 2005.

Leonard I. Sharon, Sharon, Leary & Detroy, Auburn, Thomas J. Connolly, Portland, ME, for Elaine Connolly, Plaintiff.

James R. Erwin, Pierce, Atwood LLP, Portland, ME, for HD Goodall Hospital Incorporated, Shelly Stuart, Jeffrey Toner, Delores Hopper, Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND REMANDING THE CASE TO STATE COURT

GENE CARTER, Senior District Judge.

Plaintiff Elaine Connolly initiated this action against her employer, H.D. Goodall Hospital, Inc. ("Goodall Hospital" or "the Hospital"), and three of its managing employees, following her brief employment suspension. In her Complaint, Plaintiff sets forth seven counts: violation of 42 U.S.C. § 1983 (Count I), violation of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 831 (Count II), violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4682 (Count III), breach of contract (Count IV), defamation (Count V), intentional interference with advantageous economic relations (Count VI), and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962, and

1513 (Count VII).[1] Plaintiff originally brought this action in the Superior Court of the State of Maine in and for the County of York. On November 8, 2004, Defendants timely filed a Notice of Removal pursuant to 28 U.S.C. § 1441(b).

Now before the Court is Defendants' Motion to Dismiss Counts I, II, III, VI, and VII (Docket Item No. 10). For the reasons set forth below, the Court will grant Defendants' Motion in part and will remand the case to state court.

## I. Applicable Law

 Defendants' Motion to Dismiss invokes Fed.R.Civ.P. 12(b)(6). Defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir.2001). The Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *TAG/ICIB Servs. v. Pan Am. Grain Co.*, 215 F.3d 172, 175 (1st Cir.2000).

## II. Facts

At the time of the events giving rise to this case, Plaintiff worked as a nursing shift supervisor at Goodall Hospital in Sanford, Maine. Complaint ¶ 8. Goodall Hospital is believed by its employees to be one of the primary care facilities used by President George W. Bush should he require medical services while vacationing at the family home in Kennebunkport, Maine. *Id.* ¶ 13. On or about August 27, 2004, Plaintiff was asked to appear in New York City on behalf of the American Nurses Association as a Democratic National Committee spokesperson on issues of healthcare. *Id.* ¶ 16. The ensuing roundtable discussion was held simultaneously with the Republican National Convention and was covered by numerous media outlets. *Id.* ¶ 17. At the roundtable, Plaintiff stated that "Bush is bad for America's health" and she also stated that an unnamed six-year-old boy, while receiving care at Goodall Hospital,[2] was rushed through because he lacked medical insurance. *Id.* Plaintiff opined that this procedure was "not right." *Id.* The *Portland Press Herald* covered the roundtable and published Plaintiff's statements. *Id.* ¶ 19(b). The *Press Herald* identified Plaintiff as a nurse at Goodall Hospital. *Id.*

On September 2, 2004, Plaintiff reported to work at Goodall Hospital and was confronted by Defendants Stuart and Toner regarding her comments. *Id.* ¶ 20. Plaintiff alleges that this confrontation was accusatory and hostile. *Id.* ¶ 22. On September 7, 2004, Plaintiff again appeared for work and supervisory duty. *Id.* ¶ 27. Plaintiff was again confronted by Stuart and was told that she would be suspended from her duties without pay for the statements made at the roundtable in New York. *Id.* ¶ 28–29. Plaintiff alleges that the suspension and immediate removal from the premises was under the implicit warning and threat that force would be used to remove Plaintiff if she was noncompliant with the suspension. *Id.* ¶ 36.

---

1. Plaintiff's Complaint erroneously alleges "Count V" twice, but invokes different legal theories under each claim. For clarification, the Court will refer to the RICO claim as Count VII.

2. Plaintiff did not specifically identify Goodall Hospital by name, but instead indicated that she worked at the hospital in Maine where President Bush would receive treatment.

Plaintiff further claims that the driving force behind her suspension, and thus the limitations of her speech, was a desire to limit criticism of the hospital and of President Bush. *Id.* ¶ 44.

As a result of Plaintiff's suspension, Defendant Stuart notified Plaintiff that Goodall Hospital intended to file a report with the Maine State Board of Nursing. *Id.* ¶ 52.[3] Plaintiff alleges that "the use of the color of state law to cause a threat to Plaintiff's license was designed to intimidate Plaintiff into not exercising her right to free speech for fear of an injury to her protected property interest." *Id.* ¶ 60.

### III. Discussion

Plaintiff's Complaint sets forth two counts under federal law and five counts under Maine law. The Court will first address the federal claims.

#### a. 42 U.S.C. § 1983.

■■■■ "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ...." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (internal punctuation omitted). To maintain a section 1983 claim, a plaintiff must show (1) the existence of a federal constitutional or statutory right and (2) deprivation of that right by someone acting under color of state law. *Rockwell v. Cape Cod Hosp.*, 26 F.3d

254, 256 (1st Cir.1994); *Watterson v. Page*, 987 F.2d 1, 7 (1st Cir.1993); *see also Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 37 (1st Cir.1999) ("state action is an indispensable ingredient of a suit which ... raises a section 1983 claim predicated on an abridgement of First Amendment rights."); *Barrios-Velazquez v. Asociacion de Empleados*, 84 F.3d 487, 495 (1st Cir.1996) (holding that a claim under section 1983 requires state action).

Plaintiff alleges that state action exists under section 1983 because, *inter alia:* (1) the notice to the Board of Nursing was made pursuant to state law; (2) state law provides immunity for reporting to the Board of Nursing; (3) Plaintiff's suspension formed the basis of Goodall Hospital's complaint to the Board of Nursing; (4) the Hospital may face disciplinary action from the State of Maine if Plaintiff's allegations about the uninsured six-year-old boy's rushed treatment are proven true; (5) there exists a legally entwined connection between Medicaid payments to the Hospital and the Hospital's requirement to treat uninsured patients; (6) treatment of the six-year-old boy given under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, created state action as to his case; (7) the Hospital is licensed by the state; (8) Defendant Nurses hold licenses from the state; (9) the suspension without hearing violated Plaintiff's right to due process; and (10) Defendants engaged in a conspiracy under sec-

---

3. Pursuant to 24 M.R.S.A. § 2506, such a filing by Goodall Hospital is mandatory.

A health care provider or health care entity shall, within 60 days, report in writing to the disciplined practitioner's board or authority the name of any licensed, certified or registered employee or person privileged by the provider or entity whose employment or privileges have been revoked, suspended, limited or terminated or who re-

signed while under investigation or to avoid investigation for reasons related to clinical competence or unprofessional conduct, together with pertinent information relating to that action. Pertinent information includes a description of the adverse action, the date, the location and a description of the event or events giving rise to the adverse action.

*Id.*

tion 1983. Complaint ¶ 66. To determine whether the Hospital is a state actor, the Court applies the state compulsion test, the nexus/joint action test, and the public function test to the facts of the case. *Rockwell,* 26 F.3d at 257.

### 1. State Compulsion

■ Plaintiff does not, and cannot, allege facts that any Maine law requires the Hospital to suspend employees for comments suggesting the Hospital violated state law. The requirement under 24 M.R.S.A. § 2506 that Hospitals report nursing suspensions to the Board of Nursing is insufficient for a finding of state compulsion. Section 2506 mandates reporting following a suspension; it did not require Plaintiff's suspension under the specific facts of this case. Accordingly, Plaintiff does not state a claim under the state compulsion arm of state action.

### 2. Nexus/Joint Action

■ To establish a nexus giving rise to state action requires a showing that the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Plaintiff has not alleged any facts supporting a claim that the government exercised such coercion over the Hospital that the decision to suspend Plaintiff's employment should be deemed a decision of the state.

■ With respect to Plaintiff's claims that state action is present because (1) the Board of Nursing is a state agency, (2) the notice of Plaintiff's suspension was made pursuant to state law, (3) the Hospital and its nurses are licensed by the state, and (4) the Hospital's receipt of government funds requires it to treat uninsured patients, First Circuit precedent is squarely op-

posed to Plaintiff's position. "[G]overnment regulation, even extensive regulation, and the receipt of federal funds, such as Medicare, Medicaid and Hill–Burton funds, are insufficient to establish that a hospital or other entity acted under color of state law." *Rockwell,* 26 F.3d at 258. Accordingly, there is no nexus or joint action between the Hospital and the state that gives rise to the requisite state action under section 1983.

### 3. Public Function

■ To successfully allege state action on the basis of public function "it is not enough that the function be one *sometimes* performed by government—an approach that would exclude little, given the diversity of activities performed by modern governments. Rather, where the party complained of is otherwise private, the function must be one '*exclusively* reserved to the State.'" *Logiodice v. Trs. of Me. Cent. Inst.,* 296 F.3d 22, 26 (1st Cir.2002) (quoting *Flagg Bros. v. Brooks,* 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)) (emphasis in original). The exclusive function test applies to situations where the state tries to escape its responsibilities by delegating them to private parties. *Johnson v. Pinkerton Acad.,* 861 F.2d 335, 338 (1st Cir.1988).

■ Plaintiff failed to adequately allege that the powers exercised by the Hospital constituted powers "traditionally the exclusive prerogative of the state." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Merely because the Hospital serves the public and treats patients pursuant to federal and state law does not give rise to a public function for section 1983 purposes.

■ Because Plaintiff's Complaint fails to establish state action on the part of Goodall Hospital under any of the three

tests, the section 1983 count fails to state a claim.[4] *See Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (internal punctuation omitted).

### b. RICO

 For a RICO claim pursuant to 18 U.S.C. § 1962(c) to survive a motion to dismiss, the Complaint needs to allege "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). Plaintiff's Complaint's fails to identify any enterprise[5] or pattern of racketeering activity and fails to allege that the "defendants' scheme amounted to, or posed a threat of, continuing criminal activity." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 46 (1st Cir.1991). The absence of these allegations is fatal under RICO. Accordingly, Plaintiff fails to state a claim under RICO.[6]

4. The Due Process Clause of the Fourteenth Amendment guarantees public employees with a property interest in continued employment the right to a pre-termination hearing. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Plaintiff's Complaint fails to establish that she is a public employee or that she is entitled to a hearing through any other means. Accordingly, this alleged constitutional violation also fails to state a claim.

5. Plaintiff's Complaint only states that "[b]y the actions complained of defendants engaged in a continuing enterprise involving three or more persons for the purpose of use of force or intimidation in actions affecting interstate commerce and which used illegal acts as a means of causing economic harm ...." Complaint ¶ 96. Merely reciting catch-phrases from the statute is insufficient to survive a motion to dismiss. Plaintiff has not identified any enterprise or any continuing pattern of activity that remotely constitutes a violation of RICO.

## IV. State Law Claims

 Without any remaining federal claims, the Court must next determine whether to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3) (expressly authorizing a district court to decline the exercise of supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"); *Snowden v. Millinocket Reg'l Hosp.,* 727 F.Supp. 701, 710 (D.Me.1990) (the *Gibbs*

6. Plaintiff's RICO claim also fails to identify the predicate act underlying the RICO allegation. "[A] claim for wrongful discharge cannot be successfully pursued under civil RICO when the injury itself is not the result of a predicate act." *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 47 (1st Cir.1991). Nowhere in the Complaint is it alleged that Defendants committed any of the enumerated acts in section 1961(1), nor is there alleged a pattern of racketeering activity by the Defendants. In her Response to Defendants' Motion to Dismiss (Docket Item No. 14), Plaintiff alleges that Defendants engaged in mail and wire fraud. *See* Response to Defendants' Motion to Dismiss at 19. Nowhere in the Complaint is there such an allegation. Because a Motion to Dismiss tests the sufficiency of the pleadings, the Court will not permit Plaintiff to now assert, without any factual basis, one of the enumerated acts in section 1961(1) merely to defeat a motion to dismiss.

doctrine "require[s] dismissal without action on the merits and without any exercise of discretion if all the federal claims in this suit are found to be, short of trial, deficient.").

In accordance with the discretion afforded to the Court under 28 U.S.C. § 1367(c)(3), the Court is of the view that the most appropriate course of action is to decline to exercise supplemental jurisdiction and to grant Plaintiff the opportunity to revive this suit in the forum best suited to resolve the remaining issues: the state courts of Maine. *See Carey v. MSAD # 17,* 754 F.Supp. 906, 927 (D.Me.1990).

### V. Conclusion

It is hereby **ORDERED** that Defendants' Motion to Dismiss be, and it is hereby, **GRANTED** as to Counts I and VII and those Counts are hereby **DISMISSED**. There being no remaining federal claims in this case, the Court **DECLINES** to exercise supplemental jurisdiction over the Plaintiff's state law claims. The Court hereby **REMANDS** the remaining state law claims (Counts II, III, IV, V, and VI) to the Superior Court of the State of Maine in and for the County of York.