Ivette SOTO OCASIO, Plaintiff,

v.

**FEDERAL EXPRESS CORPORATION,**
Defendant.

Civil No. 95–2198 (SEC).

United States District Court,
D. Puerto Rico.

Sept. 3, 1997.

Federico Lora–López; San Juan, PR, for Plaintiff.

Luis D. Ortíz–Abreu; Goldman, Antonetti & Córdova; San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on defendant's motion for summary judgment (**Docket # 26**), which was duly opposed (**Docket # 32**). Defendant essentially asserts that plaintiff is not entitled to protection under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. because she is currently unable to perform the essential functions of her position with Federal Express, with or without a reasonable accommodation. Defendant additionally contends that plaintiff is estopped from asserting that she can perform the essential functions of her job because she has been receiving disability benefits from both, Federal Express and the Social Security Administration. Upon careful review of the relevant facts, the applicable law and the arguments advanced by both

parties, the Court finds that defendant's motion should be **GRANTED.**

## Summary Judgment Standard

The First Circuit has recently noted that:

[s]ummary judgment is a means of determining whether a trial is actually required. It is appropriately granted when the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Thus, in order to defeat a properly crafted summary judgment motion, the party opposing it must demonstrate that a trialworthy issue looms as to a fact which could potentially affect the outcome of the suit.

*Serapión v. Martinez,* 119 F.3d 982 (1st Cir. 1997). *See also McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

For a dispute to be "genuine", "the factual controversy 'must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side'." *Lynne Woods–Leber v. Hyatt Hotels of Puerto Rico, Inc.,* 1997 WL 476360 (1st Cir.1997). *See also U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir. 1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

In determining whether to grant a summary judgment, the Court may not, however, weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d. 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

Given the foregoing, we must examine the facts, as presented by the parties, to determine whether there is any genuine issue of material fact involved.

## Factual Background

Plaintiff Ivette Soto Ocasio ("Soto") joined the Ponce branch of Federal Express as a part-time operations agent in May of 1987. Soto's duties as an operations agent included entering data in the company's computer; ordering supplies; typing, filing and other paperwork; processing bills; composing letters and memos; reviewing reports; maintaining personnel data; auditing air bills; and resolving payment disputes. On June of 1988, she was transferred to the Borinquen Station office in Aguadilla, Puerto Rico, where she attained full-time status. Plaintiff was the only operations agent in the Aguadilla office, although there were also three customer service agents and twenty-five couriers.

As a full-time operations agent, Soto arrived at work at 6:00 every morning. From 6:00 to 7:00 a.m., she would enter all the employees' time cards into the system. Thereafter, she would begin her paperwork and data entry duties until she finished entering all the "hubs"—the air bills which contain the customer's account number, the sender and recipient's names and addresses, and other pertinent information—into the system. Soto admitted that on any given day, she would enter from one-hundred to three-hundred hubs into the system. Sometimes, she would have to work over-time (until 4:00 or 5:00 p.m.) in order to finish this particular data entry duty—a task which had to be finished by the end of the next business day at the latest. She took only a one hour break throughout the day.

On March 7, 1993, Soto was hit by a car, as a result of which she suffered various injuries, including two fractured ribs, a fractured clavicle, a torn muscle in her left shoulder and ligaments, and severe whiplash. Although Soto returned to work immediately thereafter, she was forced to go on sick leave four days later because of the pain she was enduring. Her treating physician, Dr. Hiram Luigi, diagnosed her with a cervical sprain with myofacial pain. By May of 1993, her condition worsened, and she began to experience depression.

Plaintiff soon exhausted her sick leave, and had to request short term disability benefits. After twenty-six weeks, she also exhausted her short term benefits and had to request long-term benefits from Federal Express. On December 8, 1993, defendant's disability insurer notified her that her benefits plan had been approved because of her "medical inability to perform the essential duties of [her] occupation as an Operations Agent." *See* Defendant's Exhibit 15.[1] Two days later, the insurer received a report from plaintiff's attending physician which described plaintiff as having limitations in dressing, sitting, standing, ambulation, lifting, pushing, pulling, reaching above her shoulders and using the telephone. The report further stated that plaintiff could not use her left hand for simple grasping or either hand for firm grasping or fine manipulating. Neither could she use her feet for repetitive movements, such as those used in operating foot controls.[2]

On February 23, 1994, Soto was institutionalized at the CPC San Juan Capestrano Hospital, where she was diagnosed with depression. She remained there until March 13, 1994. A week later, plaintiff reported to work with a vague medical certificate which indicated that she had limitations and had to be assigned light duties. Her treating physician later admitted that he had not evaluated plaintiff prior to issuing this certificate, and that in fact, he did not evaluate her until April 14, 1994.[3] He also admitted that plaintiff could do some paperwork but not too much writing, and that she would probably experience cramping in the cervical area after half an hour of entering data on the computer.[4]

Plaintiff's supervisor rejected this certificate because its vagueness did not allow him to determine whether she was fit to accomplish the essential duties of her position. Thus, on April 4, 1994, plaintiff submitted yet another certificate, which stated that plaintiff could work two hour shifts, resting for ten minutes in between shifts, and that she could not lift more than seven pounds.[5] Plaintiff's supervisor also considered this second certificate inadequate, since it was still too vague and contained inconsistencies. Thus, he advised plaintiff that he would have to replace her pending a final determination in her case.

Upon receipt of this notice, Soto requested to be allowed to participate in Federal Express' Temporary Return to Work Program ("TRW"), to be reasonably accommodated, and to have her case evaluated by the Human Capital Management Committee. She further stated that she would be willing to undergo an evaluation by a physician chosen by Federal Express.

Pursuant to plaintiff's request, Federal Express referred her to another physician to obtain a second opinion. Upon examining Soto, this second physician, Dr. Leonel Shub, concluded that she could not lift, push or pull more than ten pounds; that she could not sit or stand for more than forty-five minutes straight, nor raise her hands over the level of her shoulders; that she could not perform any job that would require cervical flexion of more than twenty-five times within thirty minutes; and that she could not repeatedly climb stairs. In light of this evaluation, plaintiff's supervisor referred the case to the Human Capital Management Program Committee, as per plaintiff's request. Meanwhile, on July 27, 1994, defendant's insurer received a report from plaintiff's treating physician stating that Soto needed disability

---

1. The Federal Express personnel policy applicable at the time provided that long term disability benefits would extend up to a maximum of two years unless the employee had a total disability.

2. Thereafter, the insurer continually received incomplete reports from plaintiff's treating physician, a fact which could have compromised plaintiff's ability to continue to obtain disability benefits.

3. Defendant's Exhibit 7.

4. *Id.*

5. Again, her treating physician later admitted that he did not examine plaintiff prior to issuing this certificate; he also admitted not knowing what her job responsibilities were at that point. In fact, when he finally examined her on April 14, 1994, he realized that her condition had not improved since her last check up on January 18, 1994. *Id.*

because she could not work.[6]

On August 30, 1994, and upon reviewing plaintiff's case, the Committee determined that it needed additional medical information regarding her final release date, and requested that plaintiff be re-examined by Dr. Shub. The Committee also agreed that if Dr. Shub recommended that she return to work within ninety days, she would be allowed to return under the TRW program.[7]

On September 15, 1994, plaintiff was involved in another car accident, as a result of which her condition worsened. Shortly thereafter, she suffered yet another car accident. On September 24, 1994, Soto had to be institutionalized at the San Juan Capestrano Hospital for depression. She remained there until October 10, 1994.

Although on October 23, 1994, plaintiff was advised that she needed to have Dr. Shub examine her further as per the Committee's instructions, she never came around to do so. Instead, she filed for Social Security benefits. The Social Security Administration concluded that she had been disabled since February 23, 1994, when "the severity of [her] medical condition did not permit [her] to work."[8] Shortly thereafter, it notified plaintiff that she would be entitled to disability benefits beginning in August of 1994. Moreover, at her treating physician's petition, plaintiff's long-term disability benefits at Federal Express were extended until November 30, 1996; then extended again through March 31, 1997. As of this date, plaintiff continues to be employed by Federal Express.

On September 25, 1995, plaintiff filed the instant complaint, alleging that she was a qualified individual with a disability under the ADA, and that Federal Express not only refused to accommodate her when she requested reinstatement in March 24, 1994, but also retaliated against her when she complained, triggering her depression.

### Applicable Law/Analysis

The ADA protects "qualified individuals with a disability" from unlawful employment practices which are motivated by their dis-

ability. 42 U.S.C. § 12112(a). A disabled individual is deemed "qualified" under the Act if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position [which she] holds or desires." 42 U.S.C. § 12111(8).

■ Some courts have described the term "essential functions" as encompassing the fundamental duties of the individual's employment position. *See, e.g., Cheatwood v. Roanoke Indus.*, 891 F.Supp. 1528, 1537 (N.D.Ala.1995). In determining which are the fundamental duties of an employment position, an employer's judgment of what is considered fundamental shall be given due consideration. 42 U.S.C. § 12111(8). Thus, "if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* This does not, however, mean that it shall be considered the only evidence of what may constitute an essential function. *See Riel v. Electronic Data Systems Corp.*, 99 F.3d 678 (5th Cir.1996). In fact, evidence of what is considered essential may include:

> (1) the employer's judgment as to what is essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the individual to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs.

*Fussell v. Georgia Ports Authority*, 906 F.Supp. 1561, 1569 (S.D.Ga.1995).

■ If an individual demonstrates that she would be able to perform the essential functions of her job with the help of a reasonable accommodation, the employer will have the obligation to accommodate her, that is, unless it demonstrates that the accommodation would be unduly burdensome. 42 U.S.C.

---

6. Defendant's Exhibit 42.

7. Defendant's Exhibit 43.

8. Defendant's Exhibit 46.

§ 12112(b)(5)(A). A reasonable accommodation under the ADA may include making existing facilities readily accessible to and usable by individuals with disabilities, job restructuring, part time or modified schedules, and the acquisition or modification of equipment or devices. 42 U.S.C. § 12111(9). It does not, however, include the reallocation of the individual's job duties, since that would necessarily entail a change in the essential functions of her position. *See Fussell,* 906 F.Supp. at 1571. *See also Larkins v. CIBA Vision Corp.,* 858 F.Supp. 1572 (N.D.Ga. 1994); *Jackson v. Veterans Administration,* 22 F.3d 277 (11th Cir.1994); *Hendry v. GTE North, Inc.,* 896 F.Supp. 816 (N.D.Ind.1995). "[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment if the employee is unable to meet the demands of his present position." *Cheatwood,* 891 F.Supp. at 1537.

As suggested by the foregoing statutory analysis, to establish a disability claim under the ADA, a plaintiff would have to "prove three things by a preponderance of the evidence: 'First, that [he or she] was disabled within the meaning of the act. Second, that with or without reasonable accommodation he [or she] was able to perform the essential functions of [the] job. And, third, that the employer discharged him [or her] in whole or in part because of his [or her] disability'." *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996) (*citing Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996)). In the alternative, a plaintiff may use the burden shifting standard established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Jacques,* 96 F.3d at 511.[9]

■ Although defendant concedes that plaintiff has established that she was disabled, it argues that she has been unable to demonstrate that she was qualified to perform the essential functions of her job, with or without a reasonable accommodation. Defendant submits that plaintiff's essential functions are those of data entry, maintaining files, gathering data for reports, reviewing reports, maintaining adequate levels of office supplies, maintaining personnel data, processing bills received for payment and expense reports, datacomming information to the headquarters, and auditing air bills.[10] Nevertheless, it maintains that her data entry duties are by far the most important of them all, since Federal Express guarantees its customers that they will be able to trace the time, place and person to whom a package is delivered by the end of the next business day.

Defendant further contends that when plaintiff requested to be reinstated, and provided Federal Express with Dr. Luigi's vague medical certificate, it allowed her another opportunity to cure the certificate's defects by submitting a second one. Nevertheless, when they received a similar certificate for the second time, defendant was essentially forced to inform plaintiff that she would have to be replaced pending a final determination in her case, since Federal Express policy specifically provides that under no circumstances may an employer return to work without a release from a treating physician.

Finally, defendant avers that when plaintiff agreed to be examined by a physician of defendant's choosing, Federal Express stayed its previous determination in order to accommodate her requests to: (1) be allowed to participate in defendants' TRW program; (2) have more flexible job requirements; and (3) have her case evaluated by the Human Capital Management Committee. Thus, defendant referred Soto to Dr. Shub, who essentially drafted a laundry list of things plaintiff would be unable to do while at work. Subsequently, it referred plaintiff's case to the Human Capital Management Committee, which concluded that it needed additional

---

**9.** Under the *McDonnell Douglas* test, a plaintiff must prove by a preponderance of evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result. *Jacques,* 96 F.3d at 511.

**10.** Defendant's Exhibit # 3.

medical information in order to be able to make a final determination; it also promised that if Dr. Shub determined that she could go back to work, she would return under the TRW program. Shortly thereafter, however, plaintiff experienced her second and third car accidents, and had to be institutionalized at San Juan Capestrano Hospital once again. She never underwent a second evaluation.

Based on the foregoing, defendant contends that plaintiff did not put Federal Express in a position to accurately assess whether her situation allowed her to perform the essential functions of her job. In support of its contention, defendant makes reference to *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667 (1st Cir.1995), which held, inter alia, that "the employer must be able to assess the extent of the applicant's recovery from inability to perform; [and that], if accommodations are necessary to enable job performance, the employer, who is already familiar with the disability, must learn of those accommodations in order to have any realistic chance of assessing ability to perform." *Id.* at 677.

We find defendant's argument persuasive. First, by submitting its written job description for the position of Operations Agent, Federal Express clearly established the basic duties of plaintiff's job. More importantly, Federal Express demonstrated that, given the company's next-day delivery policy, plaintiff's data entry duties were indeed essential. Finally, defendant presented evidence that plaintiff's position was the only one which did not describe as an essential function the lifting of things heavier than seven pounds—the maximum weight she could admittedly lift. In other words, Federal Express demonstrated that plaintiff would have been unable to comply with the essential duties of *any* other position within the company.

In second place, Federal Express proved that plaintiff did not put the company in a position to reinstall her. We agree with defendant's contention that the medical certificates provided by plaintiff were confusing at best. Dr. Luigi's second medical certificate, for example, had checks under both the "total" and "light duties" categories regarding plaintiff's job limitations.[11] It was thus, not only understandable but also prudent to request that plaintiff undergo further evaluation. Plaintiff did not, however, comply with this request, thus preventing defendant from being in a position to adequately assess plaintiff's capacity to perform her duties.

In her opposition, plaintiff asserts that she requested specific accommodations and that defendant chose to ignore them.[12] Yet the evidence presented by defendants leads us to conclude otherwise. Defendant merely conditioned her return upon a reliable release form from Dr. Shub, which plaintiff never obtained because she never underwent the required evaluation. Defendant even expressed willingness to accept plaintiff into the TRW program which she had requested, even though the program was clearly not available in Puerto Rico at the time she requested it.

Plaintiff has failed to bring forth any evidence to establish that she was indeed qualified to perform the essential duties of her position or that of any other position at Federal Express. As defendant asserts, Federal Express was under no obligation to change the essential duties of plaintiff's position in order to fit her particular needs.

Given that we believe that plaintiff has failed to state a cognizable claim under the ADA, we believe it is unnecessary to delve into the question of whether she was estopped from requesting reinstatement. Nevertheless, the fact that both the Social Security Administration and Federal Express' disability insurance company rendered plaintiff unable to perform her work because of her disability further supports defendant's contention that plaintiff was not a "qualified individual with a disability" under the ADA.

**Pendent Jurisdiction Claims**

 It is hornbook law that a district court has discretion to exercise supplemental

---

11. See Defendant's Exhibit 35.

12. According to plaintiff, she requested (1) to be allowed to take a five to ten minute break every two hours; (2) not to lift over seven pounds; (3) to continue under treatment, and (4) to wear a neck brace.

jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See,* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in *Gibbs* "seems clearly to require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.* 727 F.Supp. 701, 709 (D.Me.1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit". *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991).

Although district courts are not compelled to dismiss pendent state law claims, in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 348 n. 5, 108 S.Ct. 614, 618 n. 5, 98 L.Ed.2d 720 (1988); citing *Gibbs* 383 U.S. at 726–727, 86 S.Ct. at 1139–40; see *Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990);*cf. Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jur-

isdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when 'state issues predominate, whether in terms of proof, of the scope of the issued raised, or the comprehensiveness of the remedy sought.' " *Carnegie–Mellon,* 484 U.S. at 348 n. 5, 108 S.Ct. at 618 n. 5, *citing Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Since plaintiff is not entitled to any award under ADA, the only award plaintiff could, in any event, pursue would be under state tort law.

In view of the above discussion, defendant's motion for summary judgment **(Docket # 26)** is **GRANTED,** and plaintiff's complaint is hereby **DISMISSED.** We also decline to exercise jurisdiction over plaintiff's remaining state claims against the defendant. Judgment shall be entered accordingly.

**SO ORDERED.**