The Honorable Alicia L. Salisbury State Senator, 20th District 1455 S.W. Lakeside Drive Topeka, Kansas 66604
Dear Senator Salisbury:
You request our opinion concerning whether the medical examination requirements of the Kansas Workers' Compensation Act conflict with the federal Americans with Disabilities Act (ADA), and if so, what effect the ADA has on conflicting provisions of the Kansas Workers' Compensation Act.
The Americans with Disabilities Act of 1990[1] is Federal legislation intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[2] Title I of the ADA is designed to remove barriers that prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities. The ADA defines "disability" as:
 "[A] physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment."[3]
The ADA's prohibition against discrimination includes medical examinations and inquiries by stating that:
 "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."[4]
The ADA further sets out acceptable medical examinations and inquiries as follows:
 "A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions."[5]
The ADA requires that any information obtained regarding the medical condition or history of an employee be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record.[6]
While the purpose of Title I of the ADA is to prohibit employers from discriminating against qualified individuals because of disability, the purpose of workers' compensation laws is to provide a system for securing prompt and fair settlement of employees' claims against employers for occupational injury and illness.[7] Provisions of the Kansas Workers' Compensation Act[8] relating to medical examinations and the release of medical information state:
 "(a) After an employee sustains an injury, the employee shall, upon request of the employer, submit to an examination at any reasonable time and place by any one or more reputable health care providers, selected by the employer, and shall so submit to an examination thereafter at intervals during the pendency of such employee's claim for compensation, upon the request of the employer.
. . . .
 "(d) Except as provided in this section, there shall be no disqualification or privilege preventing the furnishing of reports by or the testimony of any health care provider who actually makes an examination or treats an injured employee, prior to or after an injury."[9]
Kansas Administrative Regulations regarding workers' compensation further provide in part as follows:
 "The patient privilege preventing the furnishing of medical information by doctors and hospitals is waived by a worker seeking workers' compensation benefits and all reports, records or other data concerning examinations or treatment shall be furnished to the employer or insurance carrier or the director at their request without the necessity of a release by the worker. Unreasonable refusal by the worker to cooperate with the employer or insurance carrier or the director by failing to furnish medical information releases for the worker's medical history may result in compensation being denied or terminated after hearing before the director."[10]
Kansas statutes and regulations regarding medical examinations and inquiries for workers' compensation claims do not limit an employer's inquiry into the present and prior medical treatment of an injured employee. Further, there is no physician-patient privilege with regard to medical records pertaining to an employee's condition prior to or after the injury. In contrast, the ADA limits medical examinations and inquiries of an employee by his or her employer to those "shown to be job-related and consistent with business necessity."[11]
It should be noted that whether an injured employee who files a claim under the Kansas Workers' Compensation Act is protected by the ADA depends on whether the person meets the ADA definition of an individual with a disability. Many injured workers who qualify for benefits under workers' compensation may not be protected by the ADA. Workers' compensation laws are designed to provide assistance to employees who incur many kinds of injuries, whereas the ADA's purpose is to protect people from discrimination on the basis of a disability as defined by the ADA.
Because the ADA did not take effect until 1992, federal court cases interpreting its effect on state workers' compensation laws are limited. Therefore, we must look outside the courts for help in interpreting the ADA's provisions. The Federal Equal Employment Opportunity Commission (EEOC), which enforces Title I of the ADA, has issued explanations and guidelines that explain and interpret the ADA. Courts have recognized and relied on the EEOC's interpretations of the ADA:
 "Administrative interpretations of ADA by Equal Employment Opportunity Commission, while not controlling upon courts by reason of their authority, do constitute body of experience and informed judgment to which courts and litigants may properly resort for guidance."[12]
The ADA does not define "job related" and "consistent with business necessity," however those terms are explained by the EEOC as follows:
 "If a worker has an on-the-job injury which appears to affect his/her ability to do essential job functions, a medical examination or inquiry is job-related and consistent with business necessity. . . ."[13]
The EEOC also makes an exception to the confidentiality requirements for medical records in workers' compensation cases:
 "An employer may submit medical information and records concerning employees . . . to state workers' compensation offices and "second injury" funds without violating ADA confidentiality requirements."[14]
Regulations issued by the EEOC to implement the ADA are also helpful in understanding ADA provisions. One regulation regarding employee medical examinations provides:
 "Except as permitted by section 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability."[15]
C.F.R. § 1630.14(c) states in relevant part:
 "A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions." (Emphasis added.)
Along with the regulations, the EEOC published as an appendix to the regulations a section-by-section Interpretive Guidance. In the Interpretive Guidance to 29 C.F.R. § 1630.13(b), the EEOC explains that "[t]he purpose of this provision is to prevent the administration to employees of medical tests or inquiries that do not serve a legitimate business purpose."
The Interpretive Guidance to 29 C.F.R. § 1630.14(c) explains as follows:
 "This provision permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform the essential functions of his or her job. The provision permits employers or other covered entities to make inquiries or require medical examinations necessary to the reasonable accommodation process described in this part. This provision also permits periodic physicals to determine fitness for duty or other medical monitoring if such physicals or monitoring are required by medical standards or requirements established by Federal, state, or local law that are consistent with the ADA and this part in that they are job-related and consistent with business necessity." (Emphasis added.)
Although we could find no cases that address the ADA's interaction with medical disclosure requirements of state workers' compensation laws, there are cases that have decided whether medical examinations by an employer fall within the business necessity exception of the ADA. In Porter v. U.S. Alumoweld Co.,Inc.,[16] the 4th Circuit Court of Appeals determined that firing an employee who refused to take a fitness-for-duty exam in order to return to work after a leave of absence due to a work-related injury did not violate the ADA. The Court found that the employer's request for the exam to determine if the employee had the ability to perform the functions necessary for his job fell squarely within the parameters of Section 9.4 of the EEOC Technical Assistance Manual and met the ADA's business necessity requirement. In another case, the United States District Court in the District of Puerto Rico found that an employer was justified in requiring medical exams sufficient to assess the extent of an employee's recovery from inability to perform essential job functions.[17] In Rodriguez v. Loctite Puerto Rico.Inc.,[18] the plaintiff claimed that her employer violated the ADA by asking her to undergo an independent medical evaluation to verify whether her request for a two-month leave of absence for health reasons was justified even though she had a note from her doctor stating the necessity for such leave. The Court held that the employer's required independent medical examination was job-related and consistent with business necessity because without verification, the employer would be forced to accept a leave request by any employee capable of obtaining a doctor's note. The Court noted that the purpose for the ADA's limitation on medical examinations is "`to prevent the administration to employees of medical tests or inquiries that do not serve a legitimate business purpose.' 29 C.F.R. § 1630 App. (Interpretive Guidance on Title I of the Americans with Disabilities Act.)"[19]
Another case found that a grocery store owner could require a produce department employee, who professed to be HIV positive and who frequently received cuts while doing his job, to undergo a medical exam as a condition to continued employment.[20] The Court determined that the employer did not violate the ADA by requiring the exam because it had a legitimate business purpose to protect the health of the employee and others because of the frequency of bleeding from cuts received by employees working in the grocery store's produce area. The Court did, however, limit its decision to the unique circumstances of the case in finding that the medical examination was job-related and consistent with a business necessity.
In Yin v. State of California,[21] the issue before the Court was whether the State could compel an employee with a prolonged and egregious history of absenteeism and a record of job-related illnesses to undergo a fitness-for-duty medical examination. The Court found that the ADA did not preclude the State of California from requiring the independent medical exam, even though the goal was to determine if the employee had a disability, because the exam was job-related and served a substantial government interest.
 "We conclude that when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability. If such an examination is governed by the provisions of § 12112(d)(4)(A), it is covered by the business necessity exception."[22]
The EEOC has also issued an Enforcement Guidance (Guidance) which sets forth the Commission's position on the interaction between the ADA and state workers' compensation laws in a question and answer format.[23] The Guidance states the following question and response concerning medical examination and inquiry:
 "7. May an employer ask disability-related questions or require a medical examination of an employee either at the time s/he experiences and occupational injury or when s/he seeks to return to the job following such an injury?
 "Yes, in both instances, provided that the disability-related questions or medical examinations are job-related and consistent with business necessity. This requirement is met where an employer reasonably believes that the occupational injury will impair the employee's ability to perform essential job functions or raises legitimate concerns about direct threat. However, the questions and examinations must not exceed the scope of the specific occupational injury and its effect on the employee's ability, with or without reasonable accommodation, to perform essential job functions or to work without posing a direct threat." (Emphasis added.)
"Direct threat" means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation.[24]
In a footnote following question 7, the Guidance states:
 "If, as a result of an examination or inquiry, an employer refuses to return an employee to work because of a disability, the reason for doing so must be job-related and consistent with business necessity." (Emphasis added.)
The Guidance also states that:
 "The ADA does not prohibit an employer or its agent from asking disability-related questions or requiring medical examinations that are necessary to ascertain the extent of its workers' compensation liability."[25]
However, the Guidance cautions as follows:
 "An employer may not use an employee's occupational injury as an opportunity to ask far-ranging disability-related questions or to require unrelated medical examinations. Examinations and questions must be limited in scope to the specific occupational injury and its impact on the individual and may not be required more often than is necessary to determine an individual's initial or continued eligibility for workers' compensation benefits. Excessive questioning or imposition of medical examinations may constitute disability-based harassment which is prohibited by the ADA."[26]
Finally, the Guidance clarifies that the ADA's confidentiality requirements apply to medical information regarding an employee's workers' compensation claim:
 "Medical information regarding an . . . employee's workers' compensation claim must be collected and maintained on separate forms and kept in a separate medical file along with other information required to be kept confidential under the ADA. An employer must keep medical information confidential even if someone is no longer an . . . employee."[27]
Clearly, the ADA's requirements for medical examinations and disclosure of medical records are more restrictive than those set forth in the Kansas Workers' Compensation Act. Therefore, the potential for conflict between the two Acts exists. However, if an employer can demonstrate that a medical examination or inquiry is job-related and consistent with business necessity, there is no conflict between the ADA and the Kansas Workers' Compensation Act. The analysis of cases indicates that the courts have generally taken a commonsense approach in interpreting the ADA medical examination and records provisions; however, whether a required medical examination or medical record disclosure meets the business necessity requirement of the ADA depends on the specific facts of each case. Additionally, an employer must follow the ADA requirement that medical records be kept in separate files and treated as confidential with the exception that the employer may submit medical information concerning employees to state workers' compensation officers.
You also ask whether the provisions of the ADA supercede the Kansas Workers' Compensation Act. The Supremacy Clause of the Constitution of the United States generally operates to invalidate state laws that conflict or interfere with a valid act of Congress.[28] Further, in its Technical Assistance Manual, the EEOC succinctly states that "ADA requirements supersede anyconflicting state workers' compensation laws."[29] The ADA does not, however, invalidate or limit the remedies, rights, and procedures of any state law that provides greater or equal protection for the rights of individuals with disabilities than are afforded by the ADA.[30]
In Roberts v. Roadway Exp., Inc.,[31] the Court found that the Supremacy Clause precluded Colorado's Workers' Compensation Act from providing the exclusive remedy for emotional distress caused by violations of civil rights laws. Another Court found that the ADA preempted the exclusive remedy provision of California's Workers' Compensation Act by noting that Congress did not intend the ADA to defer to such exclusivity provisions. However, the Court emphasized that other provisions in the California Workers' Compensation Act that did not conflict with the ADA were not preempted.[32] In Harding v. Winn-Dixie Stores, Inc.,[33]
an employee sued his employer and the State of Florida alleging that provisions of the Florida Workers' Compensation Act violated the ADA. The Court noted that an entitlement to workers' compensation benefits is a privilege of employment subject to the antidiscrimination provisions of the ADA, but determined that the Florida Workers' Compensation Act provisions complied with the ADA. Additionally, the ADA did not preempt the Florida Workers' Compensation Act because the Workers' Compensation Act provided benefits equal to or greater than those provided by the ADA. In a Kansas case, Patton v. TIC United Corp.,[34] the plaintiff alleged that the Kansas statutory cap on noneconomic damages violated the ADA, and therefore the ADA should supercede the Kansas statute. The Court found that the ADA did not supercede the Kansas cap on noneconomic damages because in setting the cap, the Kansas Legislature did not intend to discriminate against the disabled as a class.
These cases indicate that if provisions of a state law conflict with the ADA and the ADA provides higher standards of protection, the conflicting provisions of the state law will be superceded by the ADA. However, if the conflicting state law provides higher standards of protection, then compliance with the state law rather than the ADA is acceptable. We opine that the ADA and the Kansas Workers' Compensation Act are not in conflict regarding medical tests and records as long as an employer complies with the business necessity exception of the ADA in workers' compensation cases. However, if an employer requires medical records and examinations that are not job-related and consistent with business necessity, a conflict would arise between the two Acts. In case of a conflict, we believe the ADA medical examination and inquiry provisions would supercede the broader medical examination and records disclosure provisions in the Kansas Workers' Compensation Act because the ADA provides a higher standard of protection to the employee.
In summary, the requirements for medical examinations and disclosure of medical records under the Americans with Disabilities Act are more restrictive than the medical examination and records provisions of the Kansas Workers' Compensation Act. Therefore, the potential for conflict between the two Acts exists. However, if an employer can demonstrate that a medical examination or inquiry is job-related and consistent with business necessity, there is no conflict between the ADA and the Kansas Workers' Compensation Act. Thus, an employer is not per se prohibited from requiring medical examinations that are necessary to ascertain the extent of its workers' compensation liability, or as otherwise needed for a job-related purpose consistent with business necessity. Whether a required medical examination or medical record disclosure meets the business necessity requirement of the ADA depends on the specific facts of each case. In situations where conflicts arise, we believe the ADA medical examination and inquiry provisions would supercede the broader medical examination and records disclosure provisions of the Kansas Workers' Compensation Act because the ADA provides a higher standard of protection to the employee.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] 42 U.S.C. § 12101 et seq.
[2] 42 U.S.C. § 12101(b)(1).
[3] 42 U.S.C. § 12102(2). See also Sutton et al. v. UnitedAir Lines, Inc., No. 97-1943 (U.S. Supreme Court, June 22, 1999) and Murphy v. United Parcel Service, Inc., No. 97-1992 (U.S. Supreme Court, June 22, 1999).
[4] 42 U.S.C. § 12112(d)(4)(A) (emphasis added).
[5] 42 U.S.C. § 12112(d)(4)(B).
[6] 42 U.S.C. § 12112(d)(4)(C); 29 C.F.R. § 1630.14(c)(1).
[7] See 1 Arthur Larson, The Law of Workmen's Compensation, § 1-1.10 (1994). See also K.S.A. 1998 Supp. 44-501.
[8] K.S.A. 44-501 et seq.
[9] K.S.A. 44-515.
[10] K.A.R. 51-9-10.
[11] 42 U.S.C. § 12112(d)(4)(A).
[12] Porter v. U.S. Alumoweld Co., Inc., 125 F.3d 243, Syl ¶ 3 (4th Cir. 1997); See also Grenier v. Cyanamid Plastics, Inc.,70 F.3d 667, 672 (1st Cir. 1995).
[13] EEOC Technical Assistance Manual on the Employment Provisions of the ADA, § 9.4 (January 1992).
[14] Id. at § 9.1.
[15] 29 C.F.R. § 1630.13(b).
[16] 123 F.3d 243 (4th Cir. 1997).
[17] Soto Ocasio v. Federal Exp. Corp., 977 F. Supp. 106 (D. Puerto Rico 1997).
[18] 967 F. Supp. 653 (D. Puerto Rico 1997).
[19] Id. at 661.
[20] E.E.O.C. v. Prevo's Family Market, Inc., 135 F.3d 1089
(6th Cir. 1998).
[21] 95 F.3d 864 (9th Cir. 1996).
[22] Id. at 868-869.
[23] EEOC Enforcement Guidance: Workers' Compensation and the ADA, (EEOC Notice No. 915.002) (September 3, 1996).
[24] 29 C.F.R. § 1630.2(r).
[25] EEOC Enforcement Guidance, Supra., Question no. 8.
[26] Id.
[27] Id., Question no. 10.
[28] U.S. Const., Art. VI, Cl. 2. See also Silkwood v.Kerr-McGee Corp., 464 U.S. 238 (1984).
[29] EEOC Technical Assistance Manual on the Employment Provisions of the ADA, § 9.6 b (emphasis in original).
[30] 42 U.S.C. § 12201(b).
[31] 149 F.3d 1098 (10 Cir. 1998).
[32] Wood v. County of Alameda, 875 F. Supp. 659 (N.D.Cal. 1995).
[33] 907 F. Supp. 386 (M.D.Fla. 1995).
[34] 77 F.3d 1235, cert. denied 518 U.S. 1005 (Kan. 1996).